# Exhibit C
# August 2019 SAMs

*Tsarnaev v. Garland, et al.,*
No. 21-cv-00010-MEH (D. Colo.)



U.S. Department of Justice
Federal Bureau of Prisons

Federal Correctional Complex
Florence, Colorado

---

August 27, 2019

NOTICE TO: DZHOKHAR TSARNAEV, REG. NO. 95079-038

FROM: Andre Matevousian, Complex Warden

SUBJECT: **Notification of Extension of Special Administrative Measures (SAM)**

## SUMMARY

The United States Attorney for the District of Massachusetts (USA/DMA) and the Federal Bureau of Investigation (FBI) request that the SAM be renewed. You conducted a terrorist bombing attack at the Boston Marathon in April 2013 that resulted in the deaths of three individuals and severe injury to dozens of others. Based upon the information provided by the USA/DMA and the FBI, pursuant to 28 C.F.R. § 501.3, there continues to be a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons. Therefore, we will continue to implement the SAM to restrict your access to the mail, the telephone, visitors, other inmates, and the media. The SAM will commence immediately upon expiration of the prior SAM authorization period and will be in effect for a period of one year, subject to further direction.

## PROCEDURAL HISTORY

You were charged in an indictment, individually and as an aider and abettor, with multiple counts of: (1) Use of a weapon of mass destruction and conspiracy; (2) Bombing of a place of public use and conspiracy; (3) Malicious destruction of property and conspiracy; (4) Use of a firearm during and in relation to a crime of violence; (5) Use of a firearm during and in relation to a crime of violence causing death; (6) Carjacking resulting in serious bodily injury; and (7) Interference with commerce by threats and violence.

On April 8, 2015, you were convicted in the United States District Court for the District of Massachusetts on each of the thirty counts charged in the indictment, including six death-penalty eligible counts. On May 15, 2015, after the conclusion of the death penalty phase, the jury recommended a sentence of death on the six death-penalty eligible counts. On June 24, 2015, you were sentenced to death on the six counts, and

to life imprisonment on the remaining counts. You are presently housed with the Federal Bureau of Prisons (BOP) at the ADX in Florence, Colorado.

Because of your proclivity for violence, on August 27, 2013, pursuant to 28 C.F.R. § 501.3, the Attorney General signed a memorandum directing the BOP to implement SAM to restrict your access to the mail, the media, the telephone, and visitors.

## FACTUAL BACKGROUND

### A. Tsarnaev's Criminal Conduct

On April 15, 2013, you and your brother, Tamerlan Tsarnaev, carried out a premeditated and coordinated detonation of improvised explosive devices in Boston, Massachusetts, that killed, dismembered, or injured dozens of people during the Boston Marathon. You and your brother were inspired to commit the attack by Anwar al-Aulaqui, a deceased leader of al-Qaeda, and used bomb-making instructions from *Inspire*, an al-Qaeda publication. You employed operational tradecraft in communicating during the time leading up to the bombing (including purchasing a dedicated cell phone to communicate about the bombings), and in disposing of evidence after the attack, including discarding a remaining bomb detonator and smashing your cell phones.

During the days following the attack, as law enforcement engaged in a massive manhunt for the perpetrators, you and your brother made additional bombs, and you convinced your associates to attempt to destroy evidence related to the Boston Marathon bombing. In addition, on April 19, 2013, you and your brother killed a Massachusetts Institute of Technology police officer, carjacked a civilian, and attempted to kill law enforcement officers during a violent confrontation. Your brother was killed during the drawn-out altercation, while you evaded capture and eventually hid inside a dry-docked boat in a residential neighborhood. While hiding, you scrawled messages on the boat including: "The U.S. Government is killing our innocent civilians;" "I can't stand to see such evil go unpunished;" "We Muslims are one body, you hurt one you hurt us all;" "Now I don't like killing innocent people it is forbidden in Islam but due to said [unintelligible] it is allowed;" and "Stop killing our innocent people and we will stop."

### B. Basis for Special Administrative Measures

In addition to the above-described criminal conduct, on or about April 22, 2013, following your capture, you were interviewed by the FBI. During the interview, you reaffirmed your commitment to jihad and expressed hope that your actions would inspire others to engage in violent jihad.

As further evidence of your ability to influence and inspire others in support of your terrorist goals, on May 3, 2013, the FBI arrested three of your associates for their

involvement, at your behest, in attempting to destroy evidence and obstruct the government's investigation. All three men either pleaded guilty or were convicted after trial.

On May 24, 2013, while incarcerated, you were permitted to call your mother in Russia, who recorded the call and subsequently released portions of the call to the media, in an apparent effort to engender sympathy for you. During a supervised visit on January 8, 2014, your sister, Ailina, asked about the SAM and why they were necessary. The mitigation specialist from the defense team, who was authorized to be present during the meeting, explained that the purpose of the SAM was to prevent individuals from sending communications that encouraged others to commit acts of violence. You then began to pretend that you were communicating with someone and encouraging them to commit an act of violence, stating that the first thing to do was "buy a pressure cooker."

On July 8, 2015, BOP officials observed that you had written on the wall of your cell in Arabic and English, including the phrase, "the jihad continues." You were subsequently interviewed about the markings and admitted you had written your name in Arabic and English phrases. Additionally, notwithstanding provision of the SAM prohibiting communication between inmates, you, while housed at USP Florence prior to your designation to the ADX, were able to interact with an inmate in the adjacent cell, communicating verbally through the vent in the toilet and attempting to further violate SAM conditions by passing notes.

As recently as July 17, 2018, an ADX correctional officer recovered a homemade weapon fashioned from a razor, plastic, and tin foil wrappers in your one-man cell, concealed within numerous layers of bags and other items.

The FBI reports that during the past year, you have continued in your attempts to violate the Sam. In October 2018, you attempted to send hobby craft (specifically, crocheted scarves and blankets) to unapproved contacts. In March 2019, you circumvented your SAM order by covertly providing your hobby craft to another SAM inmate, who in turn attempted to unsuccessfully to mail the items out. In April 2019, you attempted to send prison yard photos to your sister, Ailina.

Your criminal conduct, statements, and behavior during pretrial detention and trial, coupled with the declaration on your cell wall, demonstrate that you remain an unrepentant and committed terrorist who, given the opportunity, would likely instruct others to engage in violent jihad or otherwise incite violence through your rhetoric.

## CONCLUSION

Based upon information provided of your proclivity for violence, your ability to influence others through your communications, and your continued commitment to violent

jihad, it was found that there is a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons. Accordingly, we will continue to implement the SAM set forth below to restrict your access to the mail, the media, the telephone, and visitors.

1) **General Provisions**

    a) **Adherence to Usual United States Marshals Service (USMS), BOP, and Detention Facility (DF) Policy Requirements** – In addition to the below-listed SAM, you must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM are more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

    b) **Interim SAM Modification Authority** – During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify your SAM as long as any SAM modification authorized by OEO:

        i) Does not create a more restrictive SAM;

        ii) Is not in conflict with the request of the USA/DMA, FBI, USMS/BOP/DF, or applicable regulations; and

        iii) Is not objected to by the USA/DMA, FBI, or USMS/BOP/DF.

    c) **Inmate Communication Prohibitions** –

        i) You are limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written, or recorded communications) with any other inmate, visitor, attorney, or anyone else, except as outlined and allowed by this document, that could reasonably foreseeably result in you communicating (sending or receiving) information that could circumvent the SAM's intent of significantly limiting your ability to communicate (send or receive) threatening or other terrorism-related information.

        ii) The USMS/BOP/DF may permit you to communicate with other SAM inmates orally only during certain predesignated times, the place and duration to be set by the USMS/BOP/DF. You shall not have any physical contact with other inmates during this predesignated time and all such predesignated sessions may be monitored and/or recorded. Upon

**"Sensitive But Unclassified"**

request of the FBI, a copy of the recordings will be provided by the USMS/BOP/DF to the FBI to be analyzed for indications that you are attempting to pass messages soliciting or encouraging acts of violence or other crimes.

d) **Use of Interpreters/Translators by the USMS/BOP/DF –**

  i) The USMS/BOP/DF may use Department of Justice (DOJ) approved interpreters/translators as necessary for the purpose of facilitating communication with you.

  ii) No person shall act as an interpreter/translator without prior written clearance/approval from the USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/DMA

  iii) Interpreters/translators utilized by the USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with you. Interpreters/translators shall not be alone with you, either in a room or on a telephone or other communications medium.

2) **Attorney-Client Provisions**

  a) **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document –** Your attorney (or counsel) – individually by each if more than one – must sign an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the attorney acknowledges his or her awareness and understanding of the SAM provisions and his or her agreement to abide by these provisions, particularly those that relate to contact between you and your attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, your attorney, and precleared staff[2]

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USA/DMA, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one attorney where the inmate is represented by two or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his or her individual capacity.

[2] "Precleared" when used with regard to an attorney's staff, or "precleared staff member," refers to a co-counsel, paralegal, or investigator who is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, who has submitted to a background check by the FBI, has successfully been cleared by the FBI, and has received a copy of the inmate's SAM and has agreed – as evidenced by his or her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one staff

      acknowledge the restriction that they will not forward third-party messages to or from you.

      i) The USA/DMA shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to your attorney.

      ii) After initiation of the SAM and prior to your attorney being permitted to have attorney-client privileged contact with you, your attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/DMA.

      iii) The USA/DMA shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C., and the USMS/BOP/DF.

b) **Attorney Use of Interpreters/Translators –**

      i) **Necessity Requirement –** No interpreter/translator shall be utilized unless absolutely necessary where you do not speak a common language with the attorney. Any interpreter/translator shall be precleared.[3]

      ii) **Attorney Immediate Presence Requirement –** Any use of an interpreter/translator by the attorney shall be in the physical and immediate presence of the attorney – *i.e.* in the same room. The attorney shall not patch through telephone calls, or any other communications, to or from you.

      iii) **Translation of Inmate's Correspondence –** An attorney of record may only allow a precleared interpreter/translator to translate your correspondence as necessary for attorney-client privileged communication.

c) **Attorney-Client Privileged Visits –** Attorney-client privileged visits may be contact or non-contact, at the discretion of the USMS/BOP/DF.

---

member, and the provisions of this document shall be fully applicable to each such staff member in his or her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

[3] "Precleared" when used with regard to an interpreter/translator, refers to an interpreter/translator why is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, has submitted to a background check by the FBI, has successfully been cleared by the FBI, and has received a copy of the inmate's SAM and has agreed, as evidenced by his or her signature, to adhere to the SAM restrictions and requirements.

**"Sensitive But Unclassified"**

d) **Attorney May Disseminate Inmate Conversations** – Your attorney may disseminate the contents of your communications to third parties for the sole purpose of preparing your post-sentencing proceedings – and not for any other reason – on the understanding that any such dissemination shall be made solely by your attorney, and not by the attorney's staff.

e) **Unaccompanied Attorney's Precleared Paralegal(s) May Meet With Client** – Your attorney's precleared paralegal(s) may meet with you without the need for your attorney to be present. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

f) **Simultaneous Multiple Legal Visitors** – You may have multiple legal visitors provided that at least one of the multiple legal visitors is your attorney or precleared paralegal. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF. An investigator or interpreter/translator may not meet alone with you.

g) **Legally Privileged Telephone Calls** – The following rules refer to all legally privileged telephone calls or communications:

   i) **Inmate's Attorney's Precleared Staff May Participate in Inmate Telephone Calls** – Your attorney's precleared staff are permitted to communicate directly with you by telephone, provided that your attorney is physically present and participating in the legal call as well.

   ii) **Inmate's Initiation of Legally Privileged Telephone Calls** – Your initiated telephone communications with your attorney or precleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to you only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is your attorney. This privilege is contingent upon the following additional restrictions:

   (1) Your attorney will not allow any non-precleared person to communicate with you, or to take part in and/or listen to or overhear any communications with you.

   (2) Your attorney must instruct his or her staff that:

   (a) Your attorney and precleared staff are the only persons allowed to engage in communications with you.

      (b) The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send your calls, or any other communications, to third parties.

  (3) No telephone call/communication, or portion thereof, except as specifically authorized by this document:

      (a) Is to be overheard by a third party.[4]

      (b) Will be patched through, or in any manner forwarded or transmitted, to a third party.

      (c) Shall be divulged in any manner to a third party, except as otherwise provided in Section 2.d. above.

      (d) Shall be in any manner recorded or preserved.[5] Your attorney may make written notes of attorney-client privileged communications.

  (4) If the USMS/BOP/DF, FBI, or USA/DMA determines that you have used or are using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, your ability to contact your attorney by telephone may be suspended or eliminated.

h) **Documents Provided by Attorney to Inmate** – During a visit, your attorney may provide you with, or review with you, documents related to your post-sentencing proceedings, and/or material prepared by your attorney related to such proceedings, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared interpreter/translator. Any documents not related to your post-sentencing proceedings must be sent to you via general correspondence and will be subject to the mail provisions of subparagraphs 2.i. and 3.g. Documents previously reviewed and cleared for receipt by you, and already in your possession at the outset of the visit, may be discussed or reviewed by you and your attorney during the visit.

---

[4] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities when acting in connection with their official duties. This section does not allow monitoring of attorney-client privileged communications.

[5] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities. This section does not allow monitoring of attorney-client privileged communications.

**"Sensitive But Unclassified"**

      i) None of the materials provided may include inflammatory materials, materials inciting violence, military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/DMA and FBI.

      ii) The USA/DMA may authorize additional documents to be presented to you. If any document not listed or described above needs to be transmitted to you, consent for the transmission of the document may be obtained from the USA/DMA without the need to formally seek approval for an amendment to the SAM.

i) **Legal Mail**[6] – Your attorney may not send, communicate, distribute, or divulge your mail, or any of its contents (legal or otherwise), to third parties, except when disclosure of the contents is necessary for the sole purpose of providing necessary legal services related to your post-sentencing proceedings – and not for any other reason. In signing the SAM acknowledgment document, your attorney and precleared staff will acknowledge the restriction that only your case-related documents will be presented to you, and that the attorney and his or her staff are strictly prohibited from forwarding third-party mail to or from you.

3) **Inmate's Non-legal Contacts**

   a) **Non-legally Privileged Telephone Contacts –**

      i) You are only authorized to have non-legally privileged telephone calls with your immediate family members.[7]

      ii) The quantity and duration of your non-legally privileged telephone calls with your immediate family members shall be set by the USMS/BOP/DF, with a minimum of one call per month.

   b) **Rules for Telephone Calls** – For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

      i) Is to be overheard by a third party.

---

[6] "Legal mail" is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

[7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF- or FBI-verifiable) spouse, children, parents, and siblings. Requests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis.

ii) Is to be patched through, or in any manner forwarded or transmitted, to a third party.

iii) Shall be divulged in any manner to a third party.

iv) Shall be in any manner recorded or preserved.[8]

All telephone calls shall be in English unless a fluent USMS/BOP/DF- or FBI-approved interpreter/translator is available to contemporaneously monitor the telephone call. Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

c) **Telephone SAM Restriction Notifications** – For all non-legally privileged telephone calls to your immediate family member(s):

i) The USMS/BOP/DF shall inform you of the telephone SAM restrictions prior to each telephone call.

ii) The USMS/BOP/DF shall verbally inform your immediate family member(s) on the opposite end of your telephone communication of the SAM restrictions. The USMS/BOP/DF is only required to notify your communication recipient in English.

iii) The USMS/BOP/DF shall document each such telephone notification.

d) **Family Call Monitoring** – All calls with your immediate family member(s) shall be:

i) Contemporaneously monitored by the FBI.

ii) Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

iii) A copy of each telephone call recording involving an inmate/immediate family member shall be provided to the FBI by the USMS/BOP/DF. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

---

[8] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities.

e) **Improper Communications** – If telephone call monitoring or analysis reveals that any call or portion of a call involving you contains any indication of a discussion of illegal activity, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, you shall not be permitted any further calls to your immediate family members for a period of time to be determined by the USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

f) **Non-legal Visits** –

   i) **Limited Visitors** – You shall be permitted to visit only with your immediate family members, as well as the following individuals: Ziyaudy Khozhugov (nephew), Isaiah Aamir Briones (nephew), and Imani Briones (niece), if accompanied by their mother, Ailina Tsarvaeva; Ramzan Mamakaev (nephew), Saliha Ahmad Khalil (niece), and Dahesh Khalil (nephew), if accompanied by their mother, Bella Tsarnaeva; and Zahira Tsarnaeva (niece), Jannah Sumaya Briones (niece), and Yasin Khalil (nephew) if accompanied by an approved immediate family contact such as Bella Tsarnaeva or Ailina Tsarnaeva. The visitor's identity and family member relationship to you will be confirmed by the USMS/BOP/DF and FBI in advance.

   ii) **English Requirement** – All communications during non-legal inmate visits will be in English unless a fluent USMS/BOP/DF- or FBI-approved interpreter/translator is readily available to contemporaneously monitor the communication/visit. Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

   iii) **Visit Criteria** – All non-legal visits shall be:

   (1) Contemporaneously monitored by the USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

   (2) Permitted only with a minimum of fourteen (14) calendar days' advance written notice to the USMS/BOP/DF facility where you are housed.

   (3) Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff.

    (4) Limited to one adult visitor at a time. However, your FBI-verified children may visit with a pre-approved adult visitor.

g) **Non-legal Mail** – Non-legal mail is any mail not clearly and properly addressed to/from your attorney and marked "Legal Mail" (incoming or outgoing). In addition to non-legal mail from your attorney, as discussed in subparagraph 2.h., non-legal mail is only authorized with your immediate family, U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, or other federal law enforcement entities. You are prohibited from sending any hobby crafts or photographs via non-legal mail.

    i) **General correspondence with limitations** – Correspondence is authorized only with immediate family members. The volume and frequency of outgoing general correspondence with immediate family members may be limited to three pieces of paper (not larger than 8 ½" x 11"), double-sided, once per calendar week to a single recipient, at the discretion of the USMS/BOP/DF. The identity and family member relationship to you will be confirmed by the USMS/BOP/DF and FBI.

    ii) **General correspondence without limitations** – There is no volume or frequency limitation on correspondence to/from U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, and other federal law enforcement entities, unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order, or discipline of the institution, the public, or national security may be jeopardized.

    iii) All non-legal mail shall be –

        (1) **Copied** – Shall be copied (including the surface of the envelope) by the warden, or his or her designee, of the facility in which you are housed.

        (2) **Forwarded** – Shall be forwarded, in copy form, to the location designated by the FBI.

        (3) **Analyzed** – After government analysis and approval, if appropriate, your incoming/outgoing non-legal mail shall be forwarded to the USMS/BOP/DF for delivery to you (incoming), or directly to the addressee (outgoing).

      iv) The federal government shall forward your non-legal mail to the USMS/ BOP/DF for delivery to you or directly to the addressee after a review and analysis period of:

          (1) A reasonable time not to exceed fourteen (14) business days for mail that is written entirely in the English language.

          (2) A reasonable time not to exceed sixty (60) business days for any mail that includes writing in any language other than English, to allow for translation.

          (3) A reasonable time not to exceed sixty (60) business days for any mail where the federal government has reasonable suspicion to believe that a code was used, to allow for decoding.

      v) **Mail Seizure** – If outgoing/incoming mail is determined by the USMS/ BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action. You shall be notified in writing of the seizure of any mail.

4) **Communication with News Media** – You shall not be permitted to speak, meet, correspond, or otherwise communicate with any member or representative of the news media in person; by telephone; by furnishing a recorded message; through the mail, your attorney, or a third party; or otherwise.

5) **Religious Visitation**

    a) You shall not be allowed to engage in group prayer with other inmates.

    b) If a USMS/BOP/DF- and/or FBI-approved religious representative is to be present for prayer with you, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

6) **No Communal Cells and No Communication Between Cells**

    a) You shall not be allowed to share a cell with another inmate.

    b) You shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7) **Cellblock Procedures**

   a) You shall be kept separated from other inmates as much as possible while in the cellblock area.

   b) You shall be limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

8) **Access to Mass Communications** – To prevent you from receiving and acting upon critically timed information or information coded in a potentially undetectable manner, your access to materials of mass communication is restricted as follows:

   a) **Publications/Newspapers** –

      i) You may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order, or discipline of the institution; or the protection of the public. This determination is to be made by the USMS/BOP/DF, in consultation with the USA/DMA. You may correspond with the publishing company regarding technical aspects of the publication, i.e., availability of particular volumes, billing questions, etc. The review of this correspondence will be in accordance with section 8(a)(iii), below.

      ii) Sections of any publication/newspaper that offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the publications/newspapers prior to distribution to you.

      iii) If restricted by the USMS/BOP/DF rules, access to a publication will be denied. If acceptable, upon delivery, the USMS/BOP/DF will review the publication and make the initial determination. If the FBI's expertise is required, the publication will be forwarded to the FBI for review. The USMS/BOP/DF will also forward the publication to the FBI if translations are needed to make that determination. (In these cases, the FBI shall respond to the USMS/BOP/DF within fourteen (14) business days.) You shall then have access to the remaining portions of the publications/newspapers deemed acceptable, in accordance with USMS/BOP/DF policy.

      iv) In order to avoid passing messages/information from inmate to inmate, you shall be allowed to share institutionally purchased publications/ newspapers with other SAM inmates only after each publication/

    newspaper is physically screened by staff to ensure that messages cannot be passed between the SAM inmates. Publications/newspapers individually purchased by you may not be shared with any other inmate.

  b) **Television and Radio** – You are authorized to have television and radio viewing and listening privileges, in accordance with standard and applicable USMS/BOP/DF policies and procedures.

  c) **Termination or Limitation** – If the USMS/BOP/DF determines that mass communications are being used as a vehicle to send messages to you relating to the furtherance of terrorist or criminal activities, your access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

9) **Access to Books**

  a) You may have access to all books that do not facilitate criminal activity or present a substantial threat to national security or the security, discipline, or good order of the institution. This initial determination is to be made by the USMS/BOP/DF and, if the USMS/BOP/DF determines that the FBI's expertise is required, the book(s) will be forwarded to the FBI for review. In conducting its analysis, the FBI will determine whether the book advocates or promotes acts of terrorism or violence and/or whether access to the book by you would pose a substantial threat to national security.

  b) In order to avoid passing messages/information from inmate to inmate, you shall be allowed to share institutionally purchased books with other SAM inmates only after each book is physically screened by staff to ensure that messages cannot be passed between the SAM inmates. Books individually purchased by you may not be shared with any other inmate.

10) **Transfer of Custody** – In the event that you are transferred to or from the custody of the USMS, BOP, or any other DF, the SAM provisions authorized for you shall continue in effect, without need for any additional DOJ authorization.

**CONCLUSION**

  The SAM set forth herein, especially as they relate to attorney-client privileged communications and family contact, are reasonably necessary to prevent you from committing, soliciting, or conspiring to commit additional criminal activity. Moreover, these measures are the least restrictive that can be tolerated in light of your ability to aid, knowingly or inadvertently, in plans that create a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons.

With respect to telephone privileges, the SAM are reasonably necessary because of the high probability of calls to co-conspirators to arrange terrorist or criminal activities.

With respect to mail privileges, the SAM are necessary to prevent you from receiving or passing along critically timed messages. Accordingly, your interest in the timely receipt and/or submission of mail, with the possible danger the contents of the mail may pose to others has been weighed. It has been determined that delaying mail delivery to allow authorized personnel to examine a copy of the mail is the least restrictive means available to ensure that the mail is not being used to deliver requests for, or to assist in, violent threats, and/or criminal acts against government witnesses or others.

To the extent that the use of an interpreter/translator is necessary, the government has the right to ensure that the interpreter/translator given access to you is worthy of trust.

The SAM's prohibition of contact with the media is reasonably necessary. Communication with the media could pose a substantial risk to public safety if you advocate terrorist, criminal, and/or violent offenses, or if you make statements designed to incite such acts. Based upon your past behavior, it would be unwise to wait until after you solicit or attempt to arrange a violent or terrorist act to justify such media restrictions.

The SAM's limitations on access to mass communications are reasonably necessary to prevent you from receiving and acting upon critically timed messages. Such messages may be placed in advertisements or communicated through other means, such as the television and/or radio. It is believed that limiting and/or delaying media access may interrupt communication patterns you may develop with the outside world, and ensure that the media is not used to communicate information that furthers terrorist, violent, and/or criminal activities.

These conditions are imposed by the USMS/BOP/DF at the request of the Attorney General, through his designated agent, the Deputy Assistant Attorney General.

Received: August _29_, 2019
(16 pages)

Dzhokhar Tsarnaev
Reg. No. 95079-038