Civil Action No. 21-CV-00010-MEH

Dzhokhar Tsarnaev,

Plaintiff,

v.

Merrick Garland, Attorney General of the United States,
Federal Bureau of Prisons,
B. True, Warden, ADMAX, and
John Does 1-20,

   Defendants.

Plaintiff's Response to Defendants' Motion for Partial Summary Judgment for Failure to Exhaust.

Argument

  Defendants argue that Claims 1 and 2 should be dismissed for failure to exhaust administrative remedies under PLRA, 42 U.S.C § 1997e(a). Defendants provide that the administrative remedies filed by me for Claims 1 and 2 were rejected at the Central Office level and that I did not resubmit my appeals within the allotted 15 days. Defendants cite Ross v. Blake, 578 U.S. 632, 639 (2016) to support their possition.

The PLRA's exhaustion requirement applies only to administrative remedies that are "available." 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions... until such administrative remedies as are available are exhausted."); Ross, 578 U.S. at 642-643. In Ross, the Supreme Court, without dissent, defined "available" in functional rather than formalistic terms. "Available," the Court explained, only covers grievance procedures that are "capable of use to obtain some relief for the action complained of." Id. at 642. According to the Court, a grievance process is not an "available" remedy for a challenged prison restriction:

> When (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office - but in practice that office disclaims the capacity to consider those petitions. The procedure is not then 'capable of use' for the pertinent purpose... So too if administrative officials have apparent authority, but decline ever to exercise it.

Id. at 643 (emphasis added); see also id (whether grievance process is an "available" remedy depends on "the facts on the ground").

Applying this principle, the Court in Ross concluded that the prisoner there had raised a factual issue about whether the prison system's grievance process, despite being formally available for all types of grievances, operated so that, in practice, a prisoner could not obtain relief for certain kinds of grievances over which a different office actually exercised authority. Id. at 644. Prior to Ross, the D.C. Circuit had adopted the same understanding of "available" remedies under PLRA. See Kaemmerling v. Lappin, 553 F.3d 669, 675-76 (D.C. Cir 2008) (prisoner did not need to exhaust BOP grievance process where BOP lacked authority to provide relief "on the subject of Kaemmerling's complaint," i.e., his challenge to collection of a DNA sample that was statutorily required).

The factual record in this case establishes that, under Ross, BOP's grievance procedure, to the extent that it was utilized, was not and is not an "available" remedy for attaining relief from the SAMs restrictions on my photographs and hobby craft.

The administrative remedies that I filed concerning the restrictions demonstrate that while Defendant BOP implements the SAM restrictions, it has no decision-making authority to modify it. According to the SAM regulation, Defendant Garland has sole authority to decide whether to place a federal prisoner under SAMs, what the SAMs will be, and whether and how to modify SAMs. Defendants then provide direction to BOP on how to implement the SAMs for each prisoner subjected to them. So, under the SAMs regulation, just as in practice, Defendants — not BOP — have the authority to decide my SAMs modification requests. See Mohammed v. Holder, 47 F. Supp. 3d. 1236, 1241 (D. Colo. 2014) ("The referenced Administrative Remedy Program is the process for challenging BOP policies, however it does not reach to decisions made by the FBI and OEO. Thus, the Court finds that administrative type of review under APA is appropriate, but because it was not the BOP that made the decisions to implement the SAMs that are challenged; the Court will examine the sufficiency of the FBI/OEO's decisionmaking.").

The regulation provides that a prisoner subjected to SAMs "may seek review of any special restrictions" through BOP's grievance process. 28 C.F.R. § 501.3(e). The SAMs regulation does not say, and again, neither Defendants nor BOP have applied it in "practice" to mean that BOP has any decision-making authority to modify the SAM through the inmate grievance process. See Mohammed, 47 F.Supp.3d at 1241. In documents Defendants have submitted in support of their motion, BOP officials acknowledge in their responses to my administrative remedies that they do not make decisions about the SAMs restrictions and that BOP can do nothing more than convey prisoner grievances regarding SAMs restrictions to Defendants for a decision. In response to my request to be allowed to send hobby craft to my attorney, the Warden disclaims any authority by stating:

Your concerns regarding the imposition of the SAM restrictions were forwarded to the United States Attorney's Office for the District of Massachusetts (USAO/DMA), the Federal Bureau of

Investigation (FBI), and the Office of Enforcement Operations (OEO) for review. Following review, it was determined that the SAM has been properly applied to under 28 C.F.R. § 501.3. The Federal Bureau of Prisons does not generate the SAM and does not have the authority to modify it. Any modifications regarding the contact restrictions contained in the SAM requires analysis, approval and concurrence from the USAO/DMA, FBI, and OEO. Accordingly, this response to your request for Administrative Remedy is for informational purposes only.

Defendants' Attachment 9, page 005. The same request was denied again by the Regional Director who stated that:

While the BOP neither imposes nor rescinds SAMs, it implements the restrictions and can accomodate specific requests relating to the restrictions. Additionally, the BOP does not have the authority to modify your SAMs. As the Attorney General has determined your particular SAMs are necessary, they will not be removed or modified at this time and will remain in effect until such time the USAG determines they are no longer warranted. Accordingly, the institution's decision is supported.

Defendants' Attachment 9, page 007. Responses to my request for Administrative Remedy for Claim 1 bear the same language, with the Regional Director providing that my request is for "informational purposes only." Attachment 8, p.002. Consistent with Defendants having sole decision-making authority to modify SAMs and impose restrictions, BOP disclaims

such authority. Thus, BOP's grievance procedure is not an "available" remedy for removing restrictions on my photographs and hobby craft.

    Defendants also rely on a declaration from P. Trujillo, BOP's Paralegal Specialist, who served as the Administrative Remedy Clerk. Trujillo generically describes the grievance process. Trujillo provides that my administrative remedies, for Claim 1 and 2, were rejected by the Central Office for procedural deficiencies and that my BP-11 appeals were returned to me, along with a notification of the grounds for rejection of the appeal and a notification that I could resubmit my appeals in 15 days of the date of the rejection notice. The remedy cases for the two claims were not exhausted because I did not resubmit the appeals. The Bureau's Administrative Remedy Program provides that, a remedy request or appeal may be rejected at any level. 28 C.F.R. § 542.17(a). "When a submission is rejected, the inmate shall be provided a written notice...explaining the reason for

rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal." 28 C.F.R. § 542.17(b). I did not resubmit my appeals because the 15 days did not serve as a "reasonable time extension within which to correct the defect." The two rejection notices, that I've provided as Attachment 1 and 2, issued to me by the Central Office, are both dated May 22, 2020, and are stamped by the Warden's Office as "Received" June 05, 2020. The difference between the two dates, is 14 days. In filing these remedies, I have to account for the time that it takes or would take for the remedy to reach its destination, which, in this instance, at this time, was 14 days. The significant delay in mail delivery brought on by the pandemic, rendered the 15 day extension obsolete, insufficient, and "unavailable". Anything but an immediate resubmission of the appeals

would have resulted in failure. Not even a day's delay would have been acceptable. The Central Office did not afford me sufficient time to correct the deficiency, and any attempt by me to resubmit my appeals would have been futile. Even if I managed to resubmit the appeals, the BOP, as mentioned before, disclaims any authority to modify SAMs. The appeals at the Central Office level, just like at the two previous levels, would have been for "informational purposes only." And, again, Ross establishes that a prisoner need not utilize such a futile process.

Finally, Defendants cite certain cases to support their position, including Porter v. Nussle, 534 U.S. 513, 532 (2002) and Yousef v. Reno, 254 F.3d 1214, 1222-23 (10th Cir. 2001). But each of these cases were decided well before Ross, and none of them analyzes whether BOP's grievance process is "incapable of use" or unavailable, as Ross commands. Indeed, Yousef relied on a formalistic definition

of "available" remedies that Ross disavowed, and Porter does not say that a prisoner must exhaust a grievance process that affords no relief at all. See also Kaemmerling, 553 F.3d at 676 ("Requiring an inmate to exhaust an administrative grievance process that cannot address the subject of his or her complaint would serve none of the purposes of exhaustion of administrative remedies.")

BOP's grievance process is "incapable of use" and "unavailable" as an administrative remedy for removing the SAM restrictions on my photographs and my hobby craft. Defendants' motion for summary judgment for failure to exhaust should be denied.

Respectfully submitted,
Dzhokhar Tsarnaev
    Plaintiff

Dated November 29, 2021

I intended to include the rejection notices for my appeals as attachments, but I am unable to do so. On sunday, I asked prison staff to make copies of the rejection notices but they did not return them in time for me to include in this filing. If the Court needs to see the rejection notices to determine the truth of my assertions, I can provide them in future filings.



Name: Dzhokhar Tsarnaev
Reg No.: 95079-038
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500

CMZI-95079038-1129-MO-072

Office of the Clerk
United States District Court
901-19th Street, Room A105
Denver, CO 80294-3589



FEDERAL PRISON CAMP
P.O. BOX 5000
FLORENCE, COLORADO 81226

DATE: _____ - 3 2021

"SPECIAL/LEGAL MAIL"

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosed to the above address.

