IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00010-MEH

DZHOKHAR TSARNAEV,

    Plaintiff,

v.

MERRICK GARLAND, Attorney General of the United States,
FEDERAL BUREAU OF PRISONS,
B. TRUE, Warden, ADMAX, and
JOHN DOES 1-20,

    Defendants.

## SUPPLEMENTAL SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

This Court ordered Defendants to file a second motion for partial summary judgment to supplement Defendants' existing summary judgment briefing, *see* ECF Nos. 33, 43, addressing particular issues concerning the mandatory administrative exhaustion process in the context of Special Administrative Measures, or "SAMs." *See* ECF No. 48 at 15-16, 23-24; *see also* 28 C.F.R. § 501.3(e) (regulation establishing BOP's Administrative Remedy Program as the means for inmates to seek review of any SAMs restrictions).

In this second, supplemental motion, Defendants submit additional evidence providing more details concerning the operation of the administrative exhaustion process for SAMs inmates. That evidence is presented by a BOP official who has spearheaded the administrative-remedy process for SAMs inmates at the ADX for over 20 years, since before the Tenth Circuit held in *Yousef v. Reno*, 254 F.3d 1241 (10th Cir. 2001), that inmates challenging their SAMs must fully

exhaust their complaint using the BOP's Administrative Remedy Program before filing their lawsuit in federal court. This official knows the ins and outs of the administrative-remedy process for SAMs inmates and confirms that the process allows for the presentation of grievances to the SAMs decisionmakers, and that inmates can and do obtain relief through the process.

This supplemental, indisputable evidence further confirms that, far from being a dead end for SAMs inmates, the Administrative Remedy Program is an available means for Tsarnaev and other SAMs inmates to challenge provisions in their SAMs. The problem for Tsarnaev is not that the remedy process is unavailable, but that he simply elected to abandon the exhaustion process midstream. Tsarnaev has never disputed, nor could he, that he failed to complete the process for Claims 1 and 2, which challenge provisions in his SAMs regulating the dissemination of his photographs and handmade items to contacts outside the ADX.[1] As a result, Defendants are entitled to judgment in their favor on those claims.

## STATEMENT OF SUPPLEMENTAL UNDISPUTED MATERIAL FACTS

Defendants incorporate here the following pertinent undisputed material facts from their original Statement of Undisputed Material Facts: Facts 1-14, 17-29. ECF No. 33 at 2-6. Defendants further submit the following supplemental undisputed material facts ("Supp. Facts"):

**I.     The BOP transmits administrative remedies to Department of Justice officials who are responsible for the SAMs of terrorism-convicted inmates and who have the authority to modify the SAMs.**

1. Upon direction of the Attorney General or his designee, the Director of the BOP

---

[1] Defendants did not argue that Claim 3, in which Tsarnaev challenges SAMs rules governing communications with his nieces and nephews, was unexhausted. Tsarnaev confirmed in his response to Defendants' first motion for partial summary judgment that he has dismissed or abandoned all other claims. *See* ECF No. 39 ("Rsp.") at 3 (referencing "relief from the SAMs restrictions on my photographs and hobby craft" only).

may authorize a Warden to implement SAMs, procedures imposed by the Attorney General or his designee based on a finding that "there is a substantial risk that the inmate's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons." 28 C.F.R. §§ 501.3(a), 501.3(c); *see also* 28 U.S.C. § 510 (providing that the Attorney General may delegate any function to other Department of Justice officials).

    2.    The decision to implement SAMs requires an evaluation by government officials with expertise in protecting the United States from acts of terrorism. *See id.*; *see also* Synsvoll Decl., Ex. B ¶ 7.[2] Members of the Intelligence Community—in Tsarnaev's case, the FBI—provide this national-security expertise. *Id.*

    3.    The BOP does not have expertise in national-security matters equal to that of the FBI, nor does it have access to the full scope of information available to the FBI. *Id.* ¶ 8.

    4.    When a convicted terrorist like Tsarnaev uses the BOP's Administrative Remedy Program to challenge the imposition of his SAMs, or any SAMs provision governing his communications that may impact national-security interests, the BOP facilitates the administrative-remedy process by allowing the inmate to present his grievance directly to Department of Justice personnel who have both the expertise required to evaluate the potential impact of the inmate's communications and the authority to modify his SAMs. *Id.* ¶ 9.

    5.    When SAMs inmates initiate the formal administrative remedy process by submitting an Administrative Remedy Request (a "Form BP-9") at the prison level, ADX administrative staff forward that request to the ADX Legal Department. *Id.* ¶ 10.

---

[2] Paralegal Trujillo's declaration is Exhibit A. *See* ECF No. 33-1.

6. If the inmate is a convicted terrorist like Tsarnaev, the ADX attorney assigned to the matter notifies the three Department of Justice entities involved in the decisionmaking process concerning SAMs: (1) the FBI's National Joint Terrorism Task Force, which manages SAMs for convicted terrorists, including by monitoring the inmates' communications; (2) the United States Attorney's Office that prosecuted the inmate and that recommended the SAMs be imposed—in Tsarnaev's case, the United States Attorney's Office for the District of Massachusetts; and (3) the Office of Enforcement Operations (or "OEO") in DOJ's Criminal Division, which reviews requests regarding SAMs. *Id.*

7. The Director of the Office of Enforcement Operations has the authority to make SAMs less restrictive (i.e., to remove any restrictions imposed by the SAMs). *Id.* and Att. 1 ¶ 1.b.

8. The assigned ADX attorney forwards the inmate's remedy and any other relevant information to the FBI, the United States Attorney's Office, and the Office of Enforcement Operations. *Id.* ¶ 11.

9. These DOJ entities confer, then advise the ADX attorney of the decision concerning the inmate's request. *Id.* ¶ 12.

10. The ADX attorney then works with the DOJ entities and the ADX Warden to prepare a response to the inmate's remedy. *Id.*

11. If the inmate is not satisfied with the response and proceeds through subsequent levels of the administrative remedy process, ADX attorneys continue to assist, as appropriate, with the review of the inmate's appeals by providing information and following up with OEO and other DOJ personnel concerning an issue. *Id.* ¶ 13.

**II.     SAMs inmates have obtained relief through the Administrative Remedy Program.**

12.     SAMs inmates, including convicted terrorists, have used the Administrative Remedy Program to obtain modifications of their SAMs. *Id.* ¶ 14.

13.     Examples of modifications of SAMs obtained by means of the administrative-remedy process include:

- Permitting social communications with additional individuals not initially authorized in the SAM, *id.*;

- Permitting legal communications with prospective attorneys, *id.*;

- Modifying the mass communications provisions in the SAMs by expanding the scope of publications and television channels available to SAMs inmates, *id.*;

- Modifying visiting protocols to allow for a SAMs inmate to receive more than one visitor at a time, *id.* & Att. 3; and

- Eliminating a prior prohibition on group prayer for all SAMs inmate, which took into account input from inmates submitted through the Administrative Remedy Program, *id.* & Att. 4.

14.     Bureau statistics show that the Administrative Remedy Program is accessible and frequently used by ADX inmates. In 2021, ADX inmates filed more than one thousand BP-9 remedy requests at the institution level. *Id.* ¶ 25.

**III.    The BOP has removed extraneous language from responses to inmate remedies and appeals concerning SAMs.**

15.     This Court described the language used in the ADX Warden's response to one of Tsarnaev's remedies as "vague and veiled." ECF No. 48 at 13-14 (discussing remedy response in which the ADX Warden stated that it "was determined that [Tsarnaev's] SAM had been properly applied," and that the response "is for informational purposes only"); *see also* ECF No. 33-1 at 95 (Warden's response to remedy 999331-F1).

16. This language, which had become standardized over time, was intended to convey to SAMs inmates that the BOP had in fact reviewed the remedy and had taken steps to transmit it to the DOJ officials who have the authority to lessen the restrictions in an inmate's SAM. Ex. B ¶ 17.

17. The BOP now recognizes that this language is not clear and does not fully reflect its intention or accurately describe the process that allows for the presentation of the remedies of SAMs inmates directly to the officials who can evaluate the request and provide relief. *Id.* ¶¶ 16, 18.

18. The BOP has removed the language referenced in Supplemental Fact 15, above, from all responses to the remedies and appeals of SAMs inmates. *Id.* ¶ 19.

**IV.     The BOP has authority to grant relief for certain grievances about SAMs.**

19. Because the BOP does not have specialized national-security expertise and access to all relevant information that may impact national security, it does not decide whether an inmate's contacts, communications, or forms of communications outside the prison may compromise national-security interests. *Id.* ¶¶ 8, 21.

20. With regard to such decisions, the BOP's role is to facilitate the administrative-remedy process in a manner that allows Tsarnaev to present his grievance directly to national-security officials with the authority to modify the SAMs. *Id.* ¶ 22.

21. However, the BOP "can and does evaluate the merits of individual constitutional challenges and may modify particular conditions of an inmate's confinement." *Id.* ¶ 22 (quoting *Yousef*, 254 F.3d at 1222).

6

22. The BOP can provide relief to SAMs inmates through the Administrative Remedy Program, on its own authority and without input from other DOJ officials, for grievances that concern issues of prison management and conditions of confinement, including complaints about matters such as property, food, housing conditions, medical care, inmate funds, recreation, and scheduling telephone calls and visits. *Id.* ¶ 23.

23. Since *Yousef*, the BOP has worked to improve the procedures for transmitting inmate remedy requests involved in the SAMs decisionmaking process, resulting in the implementation of the procedures described in Supplemental Facts 5-11, above. Ex. B ¶ 24.

## ARGUMENT

**I.   Tsarnaev failed to complete BOP's administrative exhaustion process and cannot meet his burden to show that the process was unavailable to him.**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has repeatedly affirmed that "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) (holding that the exhaustion requirement "suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances'" and "the mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"). That includes Tsarnaev's challenges to the SAMs.

**A.   Tsarnaev failed to complete the process which the Tenth Circuit has confirmed is an available remedy for SAMs inmates.**

In accordance with the rule that the exhaustion requirement applies to all suits regarding

7

prison life, *see*, *e.g.*, *Booth v. Churner*, 532 U.S. 731, 741 (2001), the Attorney General has promulgated a regulation providing that an inmate may seek review of SAMs restrictions through the BOP's Administrative Remedy Program. 28 C.F.R. § 501.3(e) ("The affected inmate may seek review of any special restrictions imposed in accordance with paragraph (a) of this section through the Administrative Remedy Program."). The Tenth Circuit has made clear a SAMs inmate must avail himself of the Administrative Remedy Program and properly exhaust before he may bring claims in federal court. *Yousef v. Reno*, 254 F.3d 1214, 1222-23 (10th Cir. 2001); *accord United States v. Abu Ali*, 528 F.3d 210, 244 (4th Cir. 2008) ("The defendant must exhaust his administrative remedies before challenging the SAMs in federal court."); *United States v. Cureton*, 719 F. App'x 190, 194 (4th Cir. 2018) (holding that there was no jurisdiction to entertain a challenge to the SAMs where the defendant had not exhausted his administrative remedies).

Tsarnaev concedes that he failed to complete the administrative-remedy process for Claims 1 and 2, the claims challenging the prohibition on mailing his photograph and his homemade crafts to persons outside the institution. He acknowledges that "[t]he remedy cases for the two claims were not exhausted because I did not resubmit the appeals [at the Central Office level of the remedy process]." Rsp. at 7. Tsarnaev cannot litigate these unexhausted claims.

  **B.**  **The undisputed facts show that the administrative-remedy process is available.**

Having aborted the exhaustion process, Tsarnaev's claims can proceed only if he can show that the administrative-remedy process was unavailable to him. *Ross*, 578 U.S. at 642 (inmate required to exhaust only "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of'"); *see also May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) ("'the onus falls on the plaintiff to show that remedies were unavailable to him'" (quoting *Tuckel v.*

8

*Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). The undisputed facts confirm that Tsarnaev cannot meet his burden to establish any of the "three kinds of circumstances" in which the Supreme Court has found that an administrative remedy is unavailable. *Ross*, 578 U.S. at 643.

### 1. The BOP's administrative-remedy process is not a dead end.

First, the Supreme Court stated that a remedy process is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* The undisputed facts show that the administrative-remedy process is not a dead end for an inmate who seeks to challenge SAMs restrictions.

The administrative-remedy process facilitates a full consideration of *all* complaints about SAMs. Just as in *Yousef*, it remains the case that the BOP "can and does evaluate the merits of individual constitutional challenges and may modify particular conditions of an inmate's confinement." Supp. Fact 21 (quoting *Yousef*, 254 F.3d at 1222) (emphasis added). Thus, the BOP continues to provide relief for many grievances brought by SAMs inmates through the administrative-remedy process. Supp. Fact 22. For those grievances regarding SAMs restrictions that require consultation with other DOJ officials, the BOP has established streamlined procedures to ensure that the requests are transmitted, reviewed, and decided by those officials. Supp. Facts 5-11. The bottom line is that all remedy requests concerning SAMs receive full consideration.

This remedy process has resulted in numerous SAMs inmates obtaining various forms of relief, including expanding the scope of their communications privileges.[3] Supp. Facts 12-13. For example, recently in response to remedy requests from several SAMs inmates regarding group prayer, a SAMs restriction that previously prohibited group prayer was removed from all SAMs.

---

[3] The examples provided in the declaration are not exhaustive.

Supp. Fact 13. These undisputed facts prevent Tsarnaev from showing that the BOP—or any of the DOJ officials he can reach through the remedy process—are unable or "consistently unwilling to provide any relief to aggrieved inmates." *See Ross*, 578 U.S. at 643; *see also Abdulmutallab v. Barr*, No. 17-cv-02493-RM-KMT, 2019 WL 4463282, at *6 (D. Colo. Sept. 18, 2019) (recognizing that the remedy process was available as had resulted in modifications to the SAMs).

Tsarnaev's contention that the BOP independently "has no decision-making authority," *see* Rsp. at 4-7, is both factually inaccurate and legally irrelevant. The BOP continues, as it did at the time of *Yousef*, to have the ability to alone address many grievances by SAMs inmates regarding conditions of confinement. But even for those remedies that require consultation with other DOJ officials, that is legally irrelevant. Nothing in the PLRA requires that a prison official (or the BOP) must alone decide an administrative remedy. As the Supreme Court has repeatedly recognized, the language in the statute controls, and courts are not to add new requirements or exceptions. *See, e.g.*, *Ross*, 578 U.S. at 639-40. Thus, for example, in *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001), the Supreme Court rejected a futility exception, holding that exhaustion is required even if the remedy program could not provide the form of relief requested. *Id.*

Here, the statute provides: "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This broad language contains no limitation or exception that requires a prison (or even BOP) must have independent decision-making authority. Indeed, an inmate who brings a claim under the Rehabilitation Act, 29 U.S.C. § 794, must also exhaust the separate DOJ process found in 28 C.F.R. § 39.170 before filing suit in federal court. *See, e.g.*, *Brown v. Cantrell*, No. 11-cv-00200-PAB-MEH, 2012 WL 4050300 at *8 (D. Colo. Sept. 14, 2012) ("The Court concludes that the

PLRA's requirement that plaintiff exhaust all 'available' remedies requires federal inmates alleging disability discrimination to take advantage of § 39.170, which is 'available.'"). Simply put, there is no requirement that, for a remedy to be available, the BOP alone must be able to dispense the particular relief the inmate wants.

Since *Yousef* was decided over twenty years ago, the BOP has improved the process for transmitting SAMs remedies to the three DOJ components of the SAMs decision-making process. Fact 23. Hardly a dead end, the BOP's administrative-remedy process indisputably allows SAMs inmates to be heard by BOP and DOJ officials and to obtain relief.

### 2. The BOP's administrative-remedy process is capable of being used.

Neither can Tsarnaev satisfy the Supreme Court's second criterion for unavailability: that the BOP's "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use." *Ross*, 578 U.S. at 643. Far from being "essentially unknowable—so that no ordinary prisoner can make sense of what it demands," *id.* at 644, ADX inmates routinely use the familiar administrative-remedy process. Supp. Fact 14.

Tsarnaev does not contend that the remedy process was so opaque that it was impossible for him to use. His only excuse for not exhausting is that it was appropriate for him to abandon the process because he could not comply with the stated timeframes for re-submitting his procedurally defective remedy appeals to BOP's Central Office. *See* Rsp. at 8-9. That argument misses the mark. As Defendants explained in their original motion, timing constraints do not render a remedy process unavailable where an inmate does not attempt to request permission to submit a remedy out of time. ECF No. 43 at 6-7 (collecting cases); *see also*, *e.g.*, *Abram v. Leu*, 848 F. App'x 868, 871-72 (11th Cir. 2021) (inmate who allegedly was prevented from filing a timely grievance due to

prison officials' refusal to provide necessary forms "could have exhausted his administrative remedies by filing a grievance … and then by showing good cause for its tardiness" under 28 C.F.R. § 542.14(b)). Here, Tsarnaev has offered "no explanation for why he did not attempt to submit a grievance out of time," dooming his argument that the process was unavailable. *Burnett v. Miller*, 738 F. App'x 951, 953 (10th Cir. 2018) (rejecting argument that grievance procedure was unavailable ).

By utilizing the Administrative Remedy Program as the means for inmates to seek review of their SAMs, the Attorney General selected a process that is well-known to prisoners and that avoids any potential confusion that may have arisen from the creation of a brand new SAMs administrative review process. The familiar Administrative Remedy Program is a process that every "rational inmate[]" can use. *Ross*, 578 U.S. at 644. Tsarnaev's unilateral decision not to complete the process does not show that the process was unavailable. There can be no genuine dispute on that score.

### 3. Tsarnaev was not thwarted from using BOP's administrative-remedy process.

The last of the three circumstances that may render a remedy process unavailable is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 645. There is no evidence that anything of the sort happened here, and Tsarnaev has never suggested otherwise. Indeed, the undisputed facts are quite to the contrary, reflecting BOP's efforts to make it *easier* for inmates to directly reach officials who can provide relief from communications restrictions in the SAMs.

Even after the Tenth Circuit confirmed that SAMs inmates must exhaust the remedies available under the Administrative Remedy Program, *see Yousef*, 254 F.3d at 1222-23, BOP

12

officials continued to strive to improve the process. Supp. Fact 23. Those efforts culminated in the procedure that allows for the prompt dissemination of inmate remedies to the DOJ officials who can make substantive decisions about SAMs communications rules. *Id.* & Supp. Facts 5-11. This falls far short of demonstrating a sinister attempt to "thwart" an inmate from taking advantage of a grievance process. These undisputed facts prevent Tsarnaev from establishing unavailability on this basis, too.

To sum up, Tsarnaev cannot meet his burden to show that BOP's administrative-remedy process was unavailable. Claims 1 and 2 must be dismissed for failing to meet the threshold requirement of exhaustion.

**II.     The BOP has removed confusing language from remedy responses for SAMs inmates.**

Over time, the BOP had come to include certain standardized language in responses to administrative remedies for SAMs inmates. This language is found in the ADX Warden's response to Tsarnaev's remedy about the hobbycraft restriction in his SAMs. *See* ECF No. 33-1 at 95. The Warden informed Tsarnaev that "it was determined that the SAM has been properly applied to [him] under 28 C.F.R. 501.3," and that the response "is for informational purposes only." ECF No. 33-1 at 95. *Id.* This Court questioned the meaning of this language. ECF No. 48 at 14.

The ADX official with over two decades of experience with the administrative-remedy process for SAMs inmates has explained the genesis of the vague language in the Warden's response. Supp. Facts 15-16. The language had become standardized over time and was intended to convey that the BOP had in fact reviewed the inmate's remedy—along with the DOJ officials with the authority to evaluate Tsarnaev's request and to lessen the restrictions in his SAMs. Supp. Fact 16. While the Warden's response does reference sending Tsarnaev's "concerns regarding the

13

imposition of the SAM restrictions" to the United States Attorney's Office, the FBI, and the OEO, ECF No. 33-1 at 95, the BOP now recognizes that the "it was determined" and "for informational purposes only" language is unclear and does not accurately reflect the BOP's intention or fully describe the process. Supp. Fact 17. Therefore, the BOP represents to the Court that it now has removed that language from all responses to the remedies of SAMs inmates. Supp. Fact 18. The BOP intends to include clearer language in future remedy responses that more accurately reflect the review completed.

At bottom, the remedy process that the Tenth Circuit held in *Yousef* was available and mandatory for SAMs inmates remains virtually identical. The only change since *Yousef* is a more streamlined internal process whereby the BOP more efficiently transmits and obtains input from DOJ personnel who are charged with evaluating the restrictions on the inmates' contacts and communications with the outside world. Supp. Fact 23*; see also* Supp. Facts 5-11 (describing process). The administrative-remedy process remains very much available and is regularly used by SAMs inmates to obtain modifications to their SAMs. Supp. Facts 12-14. Because the process is available, Tsarnaev may not be absolved from fully and properly exhausting his claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (mandating "using all the steps that the agency holds out, and doing so *properly*").

## CONCLUSION

The Court should grant the motion for partial summary judgment, ECF No. 33, and enter judgment in favor of Defendants on Claims 1 and 2, which are unexhausted.

Respectfully submitted on March 24, 2022.

        COLE FINEGAN
        United States Attorney

        s/ *Susan Prose*
        Susan Prose
        Assistant United States Attorney
        1801 California Street, Suite 1600
        Denver, Colorado 80202
        Tel: (303) 454-0100; Fax: (303) 454-0411
        Email: susan.prose@usdoj.gov

        Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on March 24, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

    A. Powell
    Senior Attorney Advisor
    Federal Bureau of Prisons

      In addition, I certify that on March 24, 2022, I directed personnel in the United States Attorney's Office to serve the foregoing document and accompanying exhibit, along with the unpublished decisions referenced in the motion, on Mr. Tsarnaev by United States mail, addressed as follows:

    Dzhokhar Tsarnaev
    Reg. No. 95079-038
    Florence Admax
    U.S. Penitentiary
    Inmate Mail/Parcels
    P.O. Box 8500
    Florence, CO 81226

                                          s/ *Susan Prose*
                                          Susan Prose
                                          United States Attorney's Office